# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: May 14, 2025

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| SOU MOUA, | * | No. 21-1023V |
| | * | |
| Petitioner, | * | Special Master Young |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | |

*Michael G. McLaren,* Black McLaren, et al., P.C., for Petitioner;
*Madelyn Weeks*, United States Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On March 3, 2021, Sou Moua ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program. 42 U.S.C. §§ 300aa-10 to -34 (2018)[2] (the "Vaccine Act" or "Program"). Petitioner alleged that the influenza ("flu") vaccine he received on October 3, 2018, caused him to suffer from atypical Guillain-Barré Syndrome ("GBS") and/or Acute and/or Chronic Inflammatory Demyelinating Polyneuropathy ("AIDP" and "CIDP"). Pet. at 1, ECF No. 1. On February 1, 2024, the parties filed a joint stipulation, which I adopted as my decision awarding compensation on February 2, 2024. ECF No. 53.

On April 3, 2024, Petitioner filed a final motion for attorneys' fees and costs. ("Pet'r's Mot. for AFC") (ECF No. 58). Petitioner requests total attorneys' fees and costs in the amount of

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.

$226,894.37, representing $178,028.80 in attorneys' fees, and $48,865.57 in attorneys' costs. Pet'r's Mot. for AFC at 1. Pursuant to General Order No. 9, Petitioner states that he has not personally incurred any costs in this case. Pet'r's Mot. for AFC, Ex. 3 at 1. Respondent responded to the motion on April 8, 2024, stating that Respondent "is satisfied that the statutory requirements for an award of attorneys' fees and costs are met in this case" and asking the Court to "exercise its discretion and determine a reasonable award for attorneys' fees and costs." Resp't's Resp. at 2-3 (ECF No. 59). Petitioner did not file a reply.

This matter is now ripe for consideration.

## I. Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of her or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1). Here, because Petitioner was awarded compensation pursuant to a stipulation, he is entitled to a final award of reasonable attorneys' fees and costs.

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### A. Reasonable Hourly Rates

2

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules can be accessed online.[3]

Petitioner requests the following hourly rates for the work of his counsel: for Mr. William Cochran, $405.00 per hour for work performed in 2020, $420.00 per hour for work performed in 2021, and $450.00 per hour for work performed in 2023; for Mr. Christopher Webb, $351.00 per hour for work performed in 2020, $364.00 per hour for work performed in 2021, $395.00 per hour for work performed in 2022, $410.00 per hour for work performed in 2023, and $435.00 per hour for work performed in 2024; and, for Mr. Michael McLaren, $518.00 per hour for work performed in 2023. The rates requested are consistent with what counsel have previously been awarded for their Vaccine Program work, and I find them to be reasonable herein.

### B.    Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

After a careful review of Petitioner's attorneys' fees and costs motion, I find that a reduction in Petitioner's fee award is warranted. First, the time spent drafting the petition, developing strategy/plan of action prior to the petition filing, and preparing for mediation was excessive. "Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). Counsel spent more than 28 hours filing a five-and-a-half-page petition, more than 36.8 hours to "develop strategy and plan of action" prior to the petition being filed, and 37.5 hours preparing for mediation (not including the time billed for the actual mediation, or post-mediation work). *See* Pet'r's Mot. for AFC, Ex. 2 at 1-2, 5, 8-11, 12, 40-43. Additionally, the paralegals in this case spent approximately 30 hours following-up with medical providers. *See id*. at 2-14. I find that the amount of time spent on these tasks was not reasonable.

Second, the billing entries reveal time was billed for administrative tasks such as downloading, saving, performing OCR, bates stamping files, drafting notices of filing, and filing documents in CM/ECF. For example:

- Entry on 10/6/2020 noted that a paralegal billed to "download all files/save to file/OCR all 700 pages of records." Pet'r's Mot. for AFC, Ex. 2 at 3.

---

[3] The OSM Fee Schedules are available at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

3

- Entry on 3/18/2021 noted that a paralegal billed to "draft notice of filing/table of contents/bate stamp all exhibits 12-23 for approval." Pet'r's Mot. for AFC, Ex. 2 at 15.

- Entry on 4/6/2022 noted that a paralegal billed to "file new exhibits, notice of filing exhibits, table of contents and statement of completion with the court." Pet'r's Mot. for AFC, Ex. 2 at 29.

Approximately 30 hours were billed for these tasks. *See* Pet'r's Mot. for AFC, Ex. 2, *generally*. Billing at any rate for clerical and other administrative work is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (noting that tasks that "were primarily of a secretarial and clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates."). Clerical and administrative work includes tasks such as making travel arrangements, setting up meetings, reviewing invoices, filing documents, and researching basic aspects of the Vaccine Program, "for which neither an attorney nor a paralegal should charge." *Hoskins v. Sec'y of Health & Human Servs.*, No. 15-071V, 2017 WL 3379270, at *3, 6–7 (Fed. Cl. Spec. Mstr. July 12, 2017); *see also Floyd v. Sec'y of Health & Human Servs.*, No. 13-556V, 2017 WL 1344623, at *5 (Fed. Cl. Spec. Mstr. Mar. 2, 2017) ("[S]ome tasks performed by paralegals were clerical / secretarial in nature. Examples include scheduling status conferences ... preparing compact discs ... and filing documents through the CM/ECF system."); *Kerridge v. Sec'y of Health & Human Servs.*, No. 15-852V, 2017 WL 4020523, at *6 (Fed. Cl. Spec. Mstr. July 28, 2017) (noting that billing for "administrative tasks" ... are not compensated in the Vaccine Program); *Silver v. Sec'y of Health & Human Servs.*, No. 16-1019V, 2018 U.S. Claims LEXIS 1058, at *15 (Fed. Cl. Spec. Mstr. July 31, 2018) (noting that "'receiv[ing], review[ing,] and process[ing]' records and court orders, and noting deadlines, are all clerical tasks.").

In making reductions, a line-by-line evaluation of the fee application is not required. *Broekelschen v. Sec'y of Health and Human Servs.*, 102 Fed. Cl. 719, 729 (2011); *see also Wasson v. Sec'y of Health and Human Servs.*, 24 Cl. Ct. 482, 484 (1991). Rather, special masters may "'render a decision based on general guidelines as to a reasonable fee[ ]' " in the context of the Vaccine Program and of this case in particular. *Wasson*, 24 Cl. Ct. at 484. In this case, considering counsel's excessive billing and billing for clerical and administrative work, I find a 5% reduction in overall fees reasonable. This results in a reduction of **$8,901.44**. Accordingly, Petitioner is entitled to final attorneys' fees in the amount of $169,127.36.

C. Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $48,865.57 in attorneys' costs comprised of acquiring medical records, the Court's filing fee, copies, postage, long distance telephone fees, legal research fees, expert fees, life care planner fees, lost wages expert fees, and costs associated with Mr. Webb's travel for a client visit, the life care planner visit, and the mediation. Pet'r's Mot. for AFC, Ex. 2 at 57-59. Some of these costs have been supported with the necessary documentation; however, further review of some of the costs is required.

4

1. Wi-Fi

Petitioner requests reimbursement for Mr. Webb's in-flight Wi-Fi on January 6, 2022, for the life care planner visit in the amount of $24.96, and on April 19, 2023, for the mediation in the amount of $49.95. Pet'r's Mot. for AFC, Ex. 2 at 98, 126. Petitioner has not demonstrated that Mr. Webb spent his flight time working on this case; thus, these costs will not be reimbursed. *See id.* at 23, 43. Petitioner's costs award is reduced by **$74.91**.

2. Meals

Petitioner requests reimbursement for various meal expenses incurred, specifically dinner at Mico for $56.96 for Mr. Webb on April 20, 2021, and multiple meals at Stoke including $157.07 (4/17/2023) for Mr. Moua, and $36.40 (4/16/2023), $50.22 (4/17/2023), and $26.65 (4/18/2023), for Mr. Webb. Pet'r's Mot. for AFC, Ex. 2 at 120-121. These expenses were all charged to their respective rooms and there are no corresponding receipts, other than the charges appearing on the hotel invoice. *See id*. It is unclear what Mr. Webb and Mr. Moua purchased during these meals. Because Petitioner did not submit an itemized receipt for these meals, I will reduce these costs by 50% resulting in a reduction of **$163.65**.

3. Car Rentals

Petitioner requests reimbursement for Mr. Webb's rental car expenses on April 22, 2021, during the client visit and on January 14, 2022, during the life care planner visit. Both of these costs require a reduction. First, Petitioner provided an invoice for a vehicle Mr. Webb rented from Hertz from April 20, 2021, through April 22, 2021, at $150.40 per day totaling $360.64, including taxes and fees. Pet'r's Mot. for AFC, Ex. 2 at 81. The rental car invoice states that Mr. Webb rented a vehicle in Hertz's U4 Car Class (specifically a Chevrolet Camaro), which Hertz identifies as its "Adrenaline Collection," described as "head-turning, heart-pumping specialty performance versions of five of the most popular muscle cars on the road today."[4].

Second, Petitioner provided an invoice for a vehicle Mr. Webb rented from Select Elite Motors from January 17, 2022, through January 18, 2022, at a flat rate of $400.00, totaling $464.00, including taxes. Pet'r's Mot. for AFC, Ex. 2 at 91. The rental car invoice states that Mr. Webb rented a Land Rover Range Rover. *Id*. Mr. Webb stated, "Hertz was over $1,000 so decided to use local rental company." *Id*. at 98. I note that Mr. Webb also used an Uber during this trip, totaling $59.87.

The vehicles rented by Mr. Webb, during the client visit and life care planner visit, respectively, were excessive and reflects luxury expenses the Vaccine Program will not reimburse. *See, e.g.*, *Stimson v. Sec'y of Health & Human Servs.,* No. 21-2171V, 2024 WL 4133295 at *2 (Fed. Cl. Spec. Mstr. Aug. 7, 2024); *Van Vessem v. Sec'y of Health & Human Servs.,* No. 11-132V, 2018 WL 3989517, at *9-11 (Fed. Cl. Spec. Mstr. July 3, 2018); *McMurty v. Sec'y of Health & Human Servs.,* No. 15-405V, 2018 WL 5276700, at *5 (Fed. Cl. Spec. Mstr. Sept. 26, 2018);

---

[4] *See* Hertz's website at: https://www.hertz.com/rentacar/misc/index.jsp?targetPage=fleetguide.jsp (last visited April 28, 2025).

*Mostovoy v. Sec'y of Health & Human Servs.,* No. 02-10V, 2016 WL 720969, at *15-17 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *see also Riggins* v. *Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *12-14 (Fed. Cl. Spec. Mstr. June 15, 2009). Although rental cars, like lodging and airfare, is subject to fluctuations in price, "luxury" car rentals are unreasonable in the Vaccine Program absent supporting substantiation. Despite Mr. Webb's claim that Hertz was over $1,000, he provided no supporting evidence to substantiate this assertion. Accordingly, I will award one half of the cost of the car rentals, resulting in a reduction of **$412.32**.

4. Life Care Planner

Petitioner requests $12,294.66 for life care planner services provided by The Coordinating Center, which billed for 62.5 hours at a rate of $175.00 per hour, across nine invoices. *See* Fees App. Supp. Ex. 1. This amount also includes travel expenses related to the life care planner's visit including: airfare, lodging, transportation, and meals. *See id*. I find it necessary to reduce Petitioner's request for costs regarding The Coordinating Center.

First, The Coordinating Center billed their travel time at their full rate of $175.00 per hour. In the Vaccine Program, special masters traditionally have compensated time spent traveling when no other work was being performed at one-half the applicable hourly rate. *See Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); *English v. Sec'y of Health & Human Servs.*, No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). The January 31, 2022 invoice submitted by The Coordinating Center reflects a total of 7.5 hours billed for travel time at the life care planner's full rate of $175.00 per hour. Fees App. Supp. Ex. 1 at 3. As experts are held to the same reasonableness standards for their fees as attorneys, I reduce the hours billed for the life care planner's travel by 50%. This results in a reduction of **$656.25**.

Additionally, there is a billing entry in the amount of $87.50 described as "File Open" with no additional information. Fees App. Supp. Ex. 1 at 2. This billing entry appears to be administrative in nature and is not otherwise substantiated. Without additional information, I cannot establish the purpose or reasonableness of the cost, and it will therefore not be compensated. This results in an additional reduction of **$87.50**.

5. Lost Wage Expert

Petitioner requested $11,627.00 for expert services provided by Mercer Capital, Petitioner's lost wage expert, which billed for 32.25 hours at a rates between $200.00 per hour and $425.00 per hour, across three invoices. *See* Fees App. Supp. Ex. 2. This amount also included a $2,000.00 retainer, which was not applied to the services rendered, research and database charges totaling $352.00, and an "Administrative overhead" charge for $350.00. *See id*. On May 14, 2025, Petitioner filed a status report indicating that the $2,000.00 retainer check was never cashed by Mercer Capital, and thus never applied to the services they performed. ECF No. 62. As such, Petitioner amended his request for reimbursement for Mercer Capital's expenses to $9,627.00. This adjustment results in a reduction of **$2,000.00**.

Finally, Mercer Capital billed $350.00 on July 22, 2022, for "Administrative overhead" with no additional information. Fees App. Supp. Ex. 2 at 3. This billing entry appears to be administrative in nature and is not otherwise substantiated. Without additional information, I cannot establish the purpose or reasonableness of the cost, and it will therefore not be compensated. This results in an additional reduction of **$350.00**.

### 6. Justin Willer

Petitioner's neurology expert, Justin Willer, MD, charged a total of $2,200.00, representing 3.59 hours of work. *See* Fees App. Supp. Ex. 3. Dr. Willer's invoice does not indicate his hourly rate; however, I find that this cost is reasonable. In awarding the full amount of costs sought, I do not specifically endorse any particular hourly rate for Dr. Willer's work. Rather, in light of the services performed, I find that the total amount requested for his work in this case is reasonable.

The remainder of costs incurred by Petitioner's counsel are typical administrative costs incurred in the Vaccine Program.

Accordingly, Petitioner is awarded final attorneys' costs in the amount of $45,120.94.

## II. Conclusion

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2018), I have reviewed the billing records and costs in this case and find that Petitioner's request for fees and costs is reasonable. Based on the above analysis, I find that it is reasonable to compensate Petitioner and his counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $178,028.80 |
| (Reduction to Fees) | ($8,901.44) |
| **Total Attorneys' Fees Awarded** | **$169,127.36** |
| | |
| Attorneys' Costs Requested | $48,865.57 |
| (Reduction of Costs) | ($3,744.63) |
| **Total Attorneys' Costs Awarded** | **$45,120.94** |
| | |
| **Total Attorneys' Fees and Costs** | **$214,248.30** |

**Accordingly, I award a lump sum in the amount of $214,248.30 representing reimbursement for Petitioner's attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

7

**IT IS SO ORDERED**.

                                                    s/Herbrina Sanders Young
                                                    Herbrina Sanders Young
                                                    Special Master

**IT IS SO ORDERED**.

                                                   s/Herbrina Sanders Young
                                                    Herbrina Sanders Young
                                                    Special Master

**IT IS SO ORDERED**.

                                          s/Herbrina Sanders Young
                                          Herbrina Sanders Young
                                          Special Master